IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARIA HERNANDEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00228-Y-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Maria Hernandez ("Hernandez") filed this action under 42 U.S.C. § 405(g), 28 U.S.C. § 1331, and 5 U.S.C. § 706 seeking judicial review of the partially favorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and application for supplemental security income ("SSI") under Title XVI of the SSA. (ECF No. 1). After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

I.  **STATEMENT OF THE CASE**

Hernandez applied for DIB and SSI on October 21, 2014, alleging disability based on colon cancer. (Transcript ("Tr.") 12). The Commissioner initially denied her DIB and SSI application, and Hernandez timely filed a request for a hearing before Administrative Law Judge ("ALJ") William H. Helsper. (Tr. 11, 16). Hernandez attended and testified at her ALJ hearing on June 28, 2016 in Fort Worth, Texas. (Tr. 11). Also present at the hearing was Hernandez's non-attorney

representative and Dillon Snowden, the vocational expert ("VE"). (*Id.*). On September 20, 2016, the ALJ rendered a decision finding that Hernandez was not disabled. (*Id.*). Subsequently, Hernandez presented new medical evidence, and the ALJ reopened the prior decision pursuant to his authority under 20 C.F.R. §§ 404.988 and 416.1488. (*Id.*). Ultimately, the ALJ withdrew his September 20, 2016 decision and issued a "partially favorable" decision on January 18, 2017, which declared Hernandez disabled as of July 12, 2016. (*Id.*).

Hernandez contests the January 18, 2017 decision, alleging that her disability onset date should be July 15, 2014. (ECF No. 14 at 3). The record indicates that as of March 2014, Hernandez had a history of ulcerative colitis and clostridium difficile colitis. (Tr. 13). When Hernandez begin experiencing increased diarrhea in March 2014, she underwent a colonoscopy that revealed a lesion. (*Id.*). The lesion was biopsied and confirmed by pathology to be a carcinoid tumor. (*Id.*). As a result, Hernandez begin seeing her treating physician, Eduardo D. Castillo, M.D., who expressed concern that there was lymph node metastasis. (*Id.*). Dr. Castillo determined that Ms. Hernandez would need to undergo surgery in July 2014 to perform proctocolectomy with ileal pouch anal anastomosis (J-pouch) and diverting loop ileostomy. (*Id.*). Hernandez underwent surgery on July 15, 2014. (*Id.*).

By the time of Hernandez's surgery, she had been terminated from her job since March 2014. (Tr. 29). Hernandez testified at the ALJ hearing that she was terminated from her job as an automobile finance loan and customer service clerk because she had colon cancer and frequently missed work due to medical treatment. (*Id.*). At the time of Hernandez's ALJ hearing, she was working for her sister for $12.00 an hour for 15 hours per week. (Tr. 29, 31). While employed by her sister, Hernandez was a customer service representative and spoke with customers on the telephone. (Tr. 31). Hernandez's sister provided her with a work accommodation in which

Hernandez wore a wireless headset that she could take into the restroom because of the frequency of her bowel movements. (Tr. 31, 38). This way, Hernandez could still consult customers even if she were absent from her workstation. (*Id.*).

The record makes clear that Hernandez would require a special work accommodation because of her colon cancer, which causes her to suffer from frequent defecations ranging from 10 to 18 times per day and three to four times per night. (Tr. 32, 38, 578). Also because of Hernandez's colon cancer, she is anemic and often fatigued, which is evidenced by the iron infusion she underwent in either November or December 2015 and the daily iron supplements she takes. (Tr. 14, 32). Even more, Dr. Castillo opined that Hernandez's condition would require her to: (1) miss work at least four days per month, (2) frequent the restroom every thirty minutes to two hours during work, and (3) prepare for a fecal accident every two to three weeks that would require her to clean or change her clothes if she were employed full-time. (Tr. 32, 712).

Given Hernandez's job restrictions and limitations, the VE testified at the ALJ hearing that she could accomplish her previous sedentary work as an automobile finance loan and customer service clerk if she received a special accommodation. (Tr. 37-38). The VE testified that a special accommodation might include using a wireless headset to accomplish future job duties despite being away from her desk for frequent restroom breaks. (Tr. 38). The VE testified, however, that in customary work—where Hernandez is not employed by a family member—a special accommodation would not be sustainable on a long-term basis. (*Id.*). Lastly, the VE testified that if Hernandez needed to be absent from work at least four days per month, she would be unable to maintain competitive employment according to the human resources literature. (*Id.*).

Shortly after Hernandez's ALJ hearing, she was hospitalized on July 12, 2016 because of abdominal pain and vomiting. (Tr. 12). Hernandez was diagnosed with small bowel obstruction

and underwent exploratory laparotomy with lysis of adhesions and hernia repair with mesh. (Tr. 13). Hernandez's doctors also found that her colon cancer had metastasized beyond the regional lymph nodes. (*Id.*). Hernandez submitted evidence of her July 12, 2016 diagnosis to the ALJ after his September 20, 2016 decision regarding her DIB and SSI application. (Tr. 11). Consequently, the ALJ reopened his September 20, 2016 decision and issued the January 18, 2017 "partially favorable" decision regarding Hernandez's application. (*Id.*).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Hernandez had not engaged in substantial gainful activity since July 15, 2014, her alleged disability onset date. (Tr. 12). At step two, the ALJ determined that Hernandez had the severe impairment of colon cancer. (*Id.*). At step three, the ALJ determined that as of July 12, 2016, Hernandez's impairment met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404(p). (*Id.*). Particularly, the ALJ determined that from July 15, 2014 to July 12, 2016, Hernandez retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 16). At step four, the ALJ determined that Hernandez did not retain the RFC to perform her past relevant work after July 12, 2016. (Tr. 14-16). At step five, the ALJ did not determine whether there were other jobs in the national economy that Hernandez could perform.

The Appeals Council denied review on February 5, 2018. (Tr. 1-6). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Hernandez's pleadings, testimony at the administrative hearing, and the administrative record, she was 43 years old at the time of the administrative hearing. (Tr. 28). She completed high school. (ECF No. 14 at 3). Her employment history included work as an automobile finance loan and customer service clerk. (Tr. 29, 37). Hernandez asserts that her physical impairments rendered her disabled under the SSA beginning on July 15, 2014, and not solely after July 12, 2016. (*See* ECF No. 14).

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 et seq., of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §

404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC— "the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.     ANALYSIS

Hernandez raises three issues on appeal. She claims that the ALJ erred when he: (1) found that she was not disabled prior to July 12, 2016; (2) did not analyze the factors under 20 C.F.R. § 404.1527 after his RFC assessment conflicted with the opinions of medical sources; and (3) accorded partial weight to Dr. Castillo's opinion even though the opinion was consistent with the underlying record.

### A.  Substantial Evidence Does Not Support the ALJ's Findings at Steps Three and Four.

*1. Prior to July 12, 2016, Hernandez's Impairment Medically Equaled One of the Impairments Listed under 20 C.F.R. Pt. 404, Subpt. P, App. 1.*

At step three, disability exists if it satisfies at least one of the impairments under the Listing. 20 C.F.R. § 404.1520(d). Applicable here is the impairment under section 13.18 of the Listing: "*Large intestine (from ileocecal valve to and including anal canal)*[:] A. Adenocarcinoma that is inoperable, unresectable, or recurrent. OR B. Squamous cell carcinoma of the anus, recurrent after surgery. OR C. With metastases beyond the regional lymph nodes. OR D. Small-cell (oat cell) carcinoma."

The record indicates that as of March 2014, Hernandez had a history of ulcerative colitis and clostridium difficile colitis. (Tr. 13). When Hernandez began experiencing increased diarrhea in March 2014, she underwent a colonoscopy that revealed a lesion. (*Id.*). The lesion was biopsied and confirmed by pathology to be a carcinoid tumor. (*Id.*). As of March 2014, Hernandez was diagnosed with colon cancer that was not inoperable, unresectable, or recurrent as evidenced by the fact that she underwent surgery on July 15, 2014. (*Id.*). Hernandez's large intestine was removed during surgery and a J-pouch was inserted. (Tr. 30). According to Hernandez's testimony at her ALJ hearing, a J-pouch functions as an artificial intestine so that she can evacuate her stool. (*Id.*). From the time of Hernandez's surgery until July 12, 2016—when metastatic colon cancer

7

was diagnosed—Hernandez had not suffered from squamous cell carcinoma of the anus that is recurrent after surgery, metastases beyond the regional lymph nodes, or small-cell (oat cell) carcinoma.

Under these facts, the ALJ determined that from July 14, 2014—the time of Hernandez's surgery–until July 12, 2016—when her colon cancer metastasis was diagnosed, she was not disabled as defined by the impairments under the Listing. (Tr. 12-15). The ALJ, however, did not perform a critical part of the analysis under 20 C.F.R. Pt. 404, Subpt. P, App. 1 before arriving at his conclusion at step three. Once he determined that Hernandez's colon cancer did not meet a Listing prior to July 12, 2016, he should have determined whether her impairment medically equaled a Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 13.00(F)(2). An impairment is medically equivalent to a listed impairment in appendix one if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. Pt. 404.1526(a). Medical equivalence is found in three ways, but only the first method of determining medical equivalence is applicable here:

> (i) If you have an impairment that is described in appendix 1, but -
>   (A) You do not exhibit one or more of the findings specified in the particular listing, or
>   (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 404.1526(b)(1)(i) – (ii).

Here, Hernandez has one of the impairments described in appendix 1—namely, colon cancer of the large intestine. (Tr. 13, 30). Hernandez, however, did not exhibit one or more of the findings specified in the Listing prior to July 12, 2016. For instance, her colon cancer was not inoperable, unresectable, recurrent, and had not been diagnosed as metastatic until July 12, 2016. (Tr. 13). Moreover, until July 12, 2016, Hernandez had neither suffered from squamous cell

carcinoma of the anus that is recurrent after surgery nor small-cell (oat cell) carcinoma. Prior to July 12, 2016, her impairment could only be medically equivalent to a Listing if it was at least of equal medical significance to the required criteria. 20 C.F.R. § 404.1526(b)(1)(ii).

There is substantial evidence to support that Hernandez's impairment was at least of equal medical significance to the required criteria prior to July 12, 2016. *Id.*; *Leggett*, 67 F.3d at 564; *see also Hollis*, 837 F.2d at 1382. From September 16, 2014 to January 28, 2017—the date of the ALJ's final decision—Hernandez complained of and Dr. Castillo confirmed that she suffered from frequent and continued defecation that was so persistent it would not subside despite her being put on the maximum dosage of a variety of prescription drugs. (Tr. 13-14). Moreover, Hernandez was hospitalized for a few days in December 2014 after she experienced nausea and vomiting. (Tr. 13). And although in January 2015, Hernandez's frequent bowel movements briefly subsided, she still had ten bowel movements per day. (Tr. 578).

Hernandez's bowel movements resurged in June 2015. (Tr. 14). By the time of her ALJ hearing on June 28, 2016, Hernandez testified that she defecated at least eighteen times per day and three to four times per night. (Tr. 32). In response, the VE testified that she could perform sedentary work, such as continuing her previous employment as an automobile finance loan and customer service clerk, but would require a special accommodation. (Tr. 38). The VE further testified that this special accommodation could include providing Hernandez with a wireless headset, so she could perform her job functions while absent from her desk for frequent restroom breaks. (*Id.*). The VE, however, testified that in customary work—where Hernandez is not employed by a family member—a special accommodation would not be allowed on a long-term basis. (*Id.*). Nevertheless, Hernandez's ability to work with a special accommodation does not automatically equate to her ability to perform substantial gainful activity. 20 C.F.R. § 404.1573(c).

9

To that point, Dr. Castillo opined that Hernandez would need to attend the restroom every thirty minutes to two hours and be absent from work at least four times per month. (T. 712). In response, the VE testified that if Hernandez had to be absent from work at least four times per month, she would be unable to maintain competitive employment according to the human resources literature. (Tr. 38).

In addition to Hernandez's frequent and persistent bowel movements, she was also fatigued prior to July 12, 2016. Her medical records reveal that from September 2014 to November 2015, she regained her strength post-surgery, but then regressed in either November or December 2015. (Tr. 14, 32). As a result, she underwent an iron infusion. (*Id.*). The ALJ bolstered this finding when he "disagree[d] with [the] non-examining physicians' assessments because they did not consider [Hernandez's] subjective reports of frequent bowel movements, which caused fatigue and lack of endurance." (*Id.*). The ALJ then contradicted his previous statement when he partially disagreed with Dr. Castillo's opinion about her being fatigued "because [Dr. Castillo's] own lengthy medical records do not indicate [she] struggled with fatigue but rather indicated that as of March 2016 . . . [she] was doing okay and feeling stronger and more energetic." (*Id.*).

There is substantial evidence in the record demonstrating that Hernandez's colon cancer was at least of equal medical significance to the required criteria under the Listing prior to July 12, 2016. However, the ALJ did not determine whether her impairment medically equaled a Listing. Consequently, substantial evidence does not exist to support the ALJ's decision at step three. (Tr. 12-16).

> 2. *Prior to July 12, 2016, Hernandez Did Not Retain the RFC to Perform Her Past Relevant Work as an Automobile Finance Loan and Customer Service Clerk.*

At step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. §

10

404.1520(e). The record is clear that as early as March 2014, Hernandez had a diagnosis of colon cancer and previous diagnosis of ulcerative and clostridium difficile colitis that affected her ability to work. The issue at step four requires the ALJ to apply the proper legal standard to determine whether Hernandez could return to her past relevant work prior to July 12, 2016. The undersigned concludes that the ALJ did not apply the proper legal standard and did not base his decision upon substantial evidence at step four.

First, the ALJ did not assess Hernandez's RFC— "the most [Hernandez] [could] still do despite [her] limitations" prior to July 12, 2016. *Perez*, 415 F.3d at 461-62; 20 C.F.R. § 416.945(a)(1). In fact, the ALJ never discussed Hernandez's limitations at that time. The ALJ should have conducted this assessment prior to proceeding to step four and five but, he did not do so. (*See* Tr. 13).

Second, a VE was present at Hernandez's hearing pursuant to 20 C.F.R. § 404.1566(e). The VE testified as to the exertional demands of "the CSR and an auto finance specialist." (Tr. 37). When asked by Hernandez's non-attorney representative "if an individual had to be off task ten minutes every hour for unscheduled restroom breaks and sometimes more than that would they be able to hold any competitive jobs," the VE answered "[t]hat's hard to put in words." (Tr. 37-38). The VE elaborated that in "my experience and belief . . . it can be done but that's a special accommodation. That's kind of [what Hernandez] described today in her job." (Tr. 38). Hernandez described earlier in the hearing that while being employed by her sister, she had access to a wireless headset that allowed her to take phone calls in the restroom given the frequency of her bowel movements. (Tr. 31). The VE testified, however, that "-- in customary work . . . that would not be allowed on a long-term basis." (Tr. 38). In other words, if Hernandez were employed by someone

11

other than a family member, the employer would not likely sustain this long term special accommodation.

Further, the VE testified about whether Hernandez was able to perform her past relevant work experience. (*Id.*). The VE determined that if Hernandez had to be absent from work at least four times per month, she would be unable to maintain competitive employment according to the human resources literature. (*Id.*). The ALJ's decision does not consider this testimony. The ALJ only mentioned that the VE testified as to the type of Hernandez's past work and its classification. (Tr. 15). But, the ALJ cannot merely cite evidence that is favorable to his decision and not include evidence to the contrary. *Rollison v. Colvin*, No. 5:15-CV-230-BQ, 2017 WL 666115, at *1 (N.D. Tex. Jan. 6, 2017) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)) (*see also Gatewood v. Berryhill*, No. 5:16-CV-060-BQ, 2017 WL 1737904, at *1 (N.D. Tex. Mar. 14, 2017)). The ALJ's not considering the VE's testimony is in "error [and] was not harmless because it is . . . conceivable that [he] would have reached a different decision had he considered the opinion evidence discussed above." *Ivonne M. R. G. v. Berryhill*, No. 3:17-CV-1199-D, 2018 WL 4353654, at *1 (N.D. Tex. Aug. 24, 2018) (citing *McAnear v. Colvin*, No. 3:13-CV-4985, 2015 WL 1378728, at *3 (N.D. Tex. Mar. 26, 2015)).

Third, the ALJ hinged the bulk of his decision at step four on three findings: (1) Hernandez was intermittently fatigued prior to July 12, 2016; (2) she testified that she spent her days maintaining her home and caring for her children; and (3) Dr. Castillo did not address how her refusal to engage in pelvic therapy affected her recovery. (Tr. 14-15). The ALJ also considered the non-examining physicians' assessments at step four and accorded "each little weight" because they did not consider Hernandez's reports of frequent defecation, which caused a lack of endurance and

fatigue. (Tr. 14). Nevertheless, these findings do not constitute substantial evidence to support the ALJ's decision at step four.

For the foregoing reasons, the undersigned concludes that the ALJ did not apply the proper legal standards in arriving at his decision at step four, this decision is unsupported by substantial evidence, and this error is not harmless.

**B. After Not Giving Dr. Castillo's Opinion Controlling Weight, the ALJ Did Not Analyze the 20 C.F.R. § 404.1527 Factors.**

If an ALJ does not "give the treating source's medical opinion controlling weight," he must "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." 20 C.F.R. § 404.1527(c)(2). These factors include: length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, and "any factors [a claimant] or others bring to [the ALJ's] attention, or of which [he is] aware, which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i) – (ii), (c)(3), (c)(6).

Here, the ALJ accorded the opinion of Dr. Castillo, Hernandez's treating physician, "partial weight." (Tr. 15). Because he did not accord Dr. Castillo's opinion controlling weight, the ALJ should have analyzed the previously mentioned factors. The ALJ, however, did not consider all of the previously mentioned factors. For instance, the ALJ stated that he disagreed with Dr. Castillo's opinion "because his own lengthy medical records do not indicate the claimant struggled with fatigue but rather indicated that as of March 2016 . . . the claimant was doing okay and feeling stronger and more energetic." (Tr. 14). Moreover, he did not find support for Dr. Castillo's opinion because the doctor did not explain how Hernandez's refusal to undergo pelvic therapy affected her recovery. (Tr. 15). But, the ALJ did not consider the: length of the treatment relationship between

13

Hernandez and Dr. Castillo, frequency of Dr. Castillo's examinations of Hernandez, and the nature and extent of Hernandez's and Dr. Castillo's treatment relationship.

Consequently, the undersigned concludes that the ALJ did not apply the proper legal standards after according Dr. Castillo's opinion "partial weight." Had the ALJ applied the proper legal standards, perhaps he would have given Dr. Castillo's opinion "controlling weight." This omission is not harmless error because it is conceivable that had the ALJ taken all of the factors into consideration, a different administrative conclusion would have been reached. *Ivonne M. R. G.*, 2018 WL 4353654 at *1 (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006)) (*see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2002)).

## C. Whether the ALJ's Decision to Accord Dr. Castillo's Opinion Partial Weight is Consistent with the Underlying Record is Not a Proper Issue for the Court to Determine.

Hernandez's last issue on appeal challenges the weight that the ALJ afforded Dr. Castillo's opinion because it was allegedly consistent with the underlying record. (ECF No. 14 at 12). The Court's decision on this issue is limited to a determination of whether the ALJ applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. Considering this precedential guidance, the Court may not substitute its judgment for the ALJ's judgment on this issue. If the ALJ determined that Dr. Castillo's opinion should only be accorded partial weight, the undersigned cannot reweigh the evidence to reach a different conclusion on this issue. The undersigned previously determined that the ALJ did not apply the proper legal standards after he accorded Dr. Castillo's opinion partial weight, and that is as far as the undersigned can inquire into this issue.

## V. CONCLUSION

The ALJ erred in not properly determining whether Hernandez's colon cancer was at least of equal medical significance to the required criteria under the Listing prior to July 12, 2016. The

ALJ did not apply the proper legal standards in arriving at his decision at step four, and this decision is not supported by substantial evidence. The ALJ did not analyze the 20 C.F.R. § 404.1527 factors after according Dr. Castillo's opinion "partial weight." It is conceivable that had the ALJ conducted such an analysis, Hernandez's DIB and SSI application's decision might have been different. Finally, the undersigned cannot reweigh the evidence to accord Dr. Castillo's opinion "controlling weight."

## VI.  RECOMMENDATION

Because the ALJ did not apply the proper legal standards and substantial evidence does not exist to support the ALJ's factual findings and conclusions, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **December 18**, **2018** to serve and file written objections to the United States Magistrate Judge's proposed Findings, Conclusions, and Recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for a Findings, Conclusions, and Recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed **December 4**, **2018**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE